**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**ALBERT LEE ABRAHAM, JR.**                                                               **PLAINTIFF**

**V.**                            **NO. 4:15-CV-00036-DMB-SAA**

**DR. R. ARNOLD SMITH, JR., ET AL.**                                        **DEFENDANTS**

**OPINION AND ORDER**

Before the Court is the motion to withdraw the reference, Doc. #4, and the motion to remand and abstain, Doc. #7, filed by Plaintiff Albert Lee Abraham, Jr. For the reasons below, the motion to remand and abstain will be granted, and the motion to withdraw the reference denied as moot.

**I
Procedural History**

On July 17, 2012, after Dr. R. Arnold Smith, Jr., allegedly attempted to kill him in a murder-for-hire scheme,[1] Albert Lee Abraham, Jr., filed this action in state court against Dr. Smith, North Mississippi Regional Cancer Center ("Cancer Center")[2] and "John Doe Defendants A through R." On March 11, 2014, Abraham filed a Second Amended Complaint[3] against the same defendants, asserting six causes of action: (1) civil RICO; (2) civil conspiracy; (3) aiding and abetting as accessories before the fact; (4) the "tort of outrage;" (5) "alter ego liability;" and (6) punitive damages. *See* Doc. #3.

---

[1] According to the allegations of the Second Amended Complaint, Dr. Smith entered into a murder-for-hire contract with two hit men, Keaira Byrd and Derrick Lacey, to kill Abraham, utilizing the Cancer Center's resources to solicit, plan, and fund the hit. Defendants' removal notice alleges that Dr. Smith is "currently held in custody by the State of Mississippi at the Mississippi State Hospital in Rankin County, Mississippi." Doc. #1 at ¶ 6.

[2] Abraham alleges that at all relevant times, Dr. Smith was the President, Vice-President, Treasurer, Secretary, Sole-Director, Agent for Process, General Manager, and Chief Executive Officer of the Cancer Center. Doc. #3 at ¶ 31.

[3] There is no information in the record about the amended complaint that presumably preceded the Second Amended Complaint.

About a year later, on March 27, 2015, Dr. Smith filed for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi.[4] Doc. #1 at ¶ 8. Three days later, on March 30, 2015, Dr. Smith and the Cancer Center removed the state court action to this federal court, "[p]ursuant to 28 U.S.C. 1334, 1452, 1331, Rule 9027 of the Federal Rules of Bankruptcy Procedure, and any other applicable statute, law, or rule …."[5] *Id.* at 1.

On April 2, 2015, Abraham filed a "Motion to Withdraw the Standing Order of Reference," arguing that the "Standard Order of Reference" in the Northern District of Mississippi[6] does not apply to this case because Dr. Smith's bankruptcy was not filed in the Northern District of Mississippi. Doc. #4 at ¶ 2. Abraham also argues that the bankruptcy court cannot render a final decision as this case is a non-core proceeding. *Id.* at ¶ 3.

On April 24, 2015, Abraham filed a motion to abstain and remand, arguing that pursuant to 28 U.S.C. § 1331, the Court lacks subject matter jurisdiction. Doc. #7 at 2. Additionally, Abraham asserts that mandatory abstention applies because this is not a core proceeding. *Id.* at 2–3. In the alternative, Abraham argues that the Court should exercise its discretion and abstain or that equitable remand under 28 U.S.C. § 1452(b) is appropriate in order to prevent him from

---

[4] *See* Bankruptcy Case No. 15-01048-EE.

[5] On December 21, 2015, the Court issued an "Order to Show Cause" requiring Defendants to file the state court record as required by 28 U.S.C. § 1446(a) by December 28, 2015. Doc. # 23. On December 28, 2015, Defendants responded by filing a "Motion for Writ of Certiorari to the Circuit Clerk of Leflore County, Mississippi for Certified Copies of the State Court Record and for Additional Time to File State Court Record," *see* Doc. #25, which motion is pending. Because the Court concludes that this case should be remanded to state court, Defendants' pending motion for a writ will be denied as moot.

[6] Abraham attached to the motion the "Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc" entered on August 13, 1984, which automatically refers "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 … which were pending in the Bankruptcy Court of the Northern District of Mississippi, on June 27, 1984, which have been filed in this district since that date and which may be filed herein hereafter … to the Bankruptcy Judge of this district for consideration and resolution consistent with the law." Doc. #4-1. It also orders that "[i]n accordance with 28 U.S.C. Section 157(b)(5), … all personal injury tort and wrongful death claims arising in or related to a case under Title 11 pending in this court shall be tried in, or as determined by, this court and shall not be referred by this order." *Id.*

suffering delay and other prejudice. *Id.* at 3. Lastly, Abraham argues that the non-bankruptcy defendant, the Cancer Center, should be severed. *Id.* at 3–4.

Dr. Smith and the Cancer Center oppose the motion to abstain and remand, arguing that mandatory abstention is statutorily precluded since this is an action to recover for personal injury tort claims, and that permissive abstention and equitable remand are also inapplicable. Doc. #16 at 9–10; Doc. #19 at 3–4. Defendants did not file a response to the motion to withdraw the reference.

## II
## Motion to Remand and Abstain

### A. Federal Question Jurisdiction

In requesting the Court to remand or abstain, Abraham first argues that federal question jurisdiction under 28 U.S.C. § 1331 does not apply because the complaint alleges only claims under Mississippi state law.[7] Doc. #7 at 2. Under 28 U.S.C. § 1331, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." When a case is removed to federal court, the removing party bears the burden to establish that jurisdiction exists. *Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004) (citation omitted).

In their removal notice, Defendants claim that federal question jurisdiction exists because they "assert multiple federal questions under the constitution and laws of the United States, including but not necessarily limited to:"

   a. Fourth Amendment search and seizure deprivations and claims for damages for illegal searches and seizures of Dr. Smith's home, office, and his person;
   b. Fifth and Fourteenth Amendment procedural and substantive due process deprivations, including claims for damages; and

---

[7] The automatic stay is not at issue in this case. The Southern District Bankruptcy Court lifted the automatic stay to permit this Court to consider Abraham's motion to abstain and remand. Doc. #16 at Ex. Q.

3

  c. 42 U.S.C. §1983 constitutional torts and related claims and damages asserted by Dr. Smith in Dr. Smith's counter-claim against Plaintiff Albert Lee Abraham, Jr.; and
  d. as more specifically set out and referenced in Dr. Smith's Answer and Counter-Claim and the Answer of NCMRCC.

Doc. #1 at ¶ 9.

  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). Based on a review of the Second Amended Complaint, Abraham alleges only claims arising under Mississippi state law; no federal causes of action are asserted.

  Moreover, Defendants' assertion of a counterclaim arising under federal law or the Constitution is insufficient to establish federal question jurisdiction. *See, e.g., Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) ("Allowing a counterclaim to establish 'arising under' jurisdiction would … contravene the longstanding polices underlying our precedents."). Consequently, the Court does not have jurisdiction under 28 U.S.C. § 1331. The Court's jurisdictional analysis, however, does not end here.

  Defendants also assert that the Court has jurisdiction under 28 U.S.C. § 1334.[8] Doc. #3 at 1. Section 1334(b) provides that federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." "For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under,' title 11. … [I]t is necessary only to determine whether a

---

[8] Defendants contend in their removal notice that they "are entitled to removal of this civil action under 28 U.S.C. §1452 and §1334." Doc. #1 at ¶ 8. Section 1452 concerns the removal of claims related to bankruptcy cases.

matter is at least 'related to' the bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). A matter is related to a debtor's bankruptcy if it "could conceivably have any effect on" administration of the debtor's estate. *Id.* (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis and citations omitted).

Applying this test, Abraham's allegations and request for damages clearly could have an impact on Dr. Smith's Chapter 13 bankruptcy case. *See, e.g., id.* (finding related to jurisdiction where plaintiffs sought to recover money from debtors). An award of damages may affect Dr. Smith's ability to successfully reorganize. *See Orion Ref. Corp. v. Fluor Enterprises, Inc.*, 319 B.R. 480, 487 (E.D. La. 2004) (award of damages would have effect on debtor's bankruptcy). For these reasons, the Court finds that this action is "related to" Dr. Smith's bankruptcy case. This Court, therefore, has subject matter jurisdiction under 28 U.S.C. § 1334.

**B.     Mandatory Abstention**

Next, Abraham argues the Court should abstain from this matter because it is not a core proceeding and can be timely adjudicated in state court. 28 U.S.C § 1334(c)(2) establishes the doctrine of mandatory abstention. *See Galloway v. Bond, Botes & Stover, P.C.*, 597 F. Supp. 2d 676, 679 (S.D. Miss. 2008). Under § 1334(c)(2), mandatory abstention applies where:

1. A motion has been timely filed requesting abstention;
2. The cause of action is essentially one that is premised on state law;
3. The proceeding is non-core or related to the bankruptcy case;
4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; and
5. The proceeding has already been commenced and can be timely adjudicated in state court.

*Wright v. River Region Med. Corp.*, No. 3:10-CV-193-HTW-LRA, 2012 WL 3114536, at *2 (S.D. Miss. July 31, 2012) (citing *Berry v. Pharmacia Corp.*, 316 B.R. 883, 888 n.9 (S.D. Miss.

5

2004)).  *See also Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996); *Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 350 (E.D. Va. 2006).

In this case, the first two factors have been met. Abraham timely filed a motion to abstain and, as previously discussed, the Second Amended Complaint alleges only causes of action under Mississippi state law.

Regarding the third factor, the Bankruptcy Code does not define what constitutes a "core" proceeding. However, 28 U.S.C. § 157(b)(2) sets forth a non-exclusive list of core proceedings. *See* 28 U.S.C. § 157(b)(2)(A)-(P). The Fifth Circuit defines core proceedings as those "arising under" and "arising in" title 11. *Garner v. BankPlus*, 470 B.R. 402, 405 (S.D. Miss. 2012) (citation omitted). Thus, a proceeding is core when it involves a right created by federal bankruptcy law or if it only arises in bankruptcy. *In re Wood*, 825 F.2d at 97. On the other hand, a non-core proceeding does not involve a substantive right under the Bankruptcy Code and could exist outside of the bankruptcy proceeding. *Id.*

Abraham's complaint exists entirely outside the Bankruptcy Code because it alleges causes of action solely under Mississippi state law. *See Thomas v. R.J. Reynolds Tobacco*, 259 B.R. 571, 577 (S.D. Miss. 2001) (claims are non-core when based on Mississippi law and "not based on any right created by the federal bankruptcy law"). Absent the bankruptcy proceeding, Abraham's causes of action would still exist. *See Garner*, 470 B.R. at 408 (proceeding is non-core when "causes of action arose entirely before the debtors filed their bankruptcy petitions and, but for the bankruptcy filings, could have proceeded in state court") (citation omitted). Accordingly, with the third factor met, the Court finds this action involves a non-core proceeding.

As for the fourth factor, this Court has already determined that federal question jurisdiction does not exist, and that Abraham's complaint would not be before this Court absent jurisdiction pursuant to § 1334.

The fifth factor is also satisfied because this action was commenced in state court and it appears Abraham's claims can be timely adjudicated in state court. Indeed, the state court is in a better position to timely adjudicate these matters than this Court. Before removal, this case had been pending in state court for three years, the parties had engaged in significant discovery, and a trial date was set, with the case being removed just three days before trial. *See Wright,* 2012 WL 3114536, at *4 ("The matter was set to go to trial, and dispositive motions had already been resolved when it was removed from state court. Returning the lawsuit to the court where discovery and pretrial practice has been completed can only speed its resolution."). Furthermore, the criminal and civil proceedings against Defendants were assigned to the same judge pre-removal.[9]

In sum, all of the factors weigh in favor of mandatory abstention. Defendants argue, however, that 28 U.S.C. § 157(b)(4) precludes mandatory abstention because Abraham seeks recovery on personal injury tort claims. Under § 157(b)(4), mandatory abstention under § 1334(c)(2) does not apply to non-core personal injury tort suits against the bankruptcy estate. *See Berry*, 316 B.R. at 888–89.

Abraham admits that personal injury claims are not subject to mandatory abstention under § 157(b)(4) but argues the Court should still abstain because he has only suffered from emotional injuries and not from an actual physical injury. Doc. #8 at 9 (citing *Massey Energy*

---

[9] The Chief Justice of the Mississippi Supreme Court assigned both the criminal and civil proceedings against Defendants to Senior Status Judge L. Breland Hilburn.

7

*Co.*, 351 B.R. at 351). In this regard, the only matter in Abraham's complaint alleging a personal injury claim is his cause of action for the tort of outrage,[10] which avers:

> The 'tort of outrage' is the recovery of damages for mental pain and suffering. The elements are: (A) either intentional conduct or unintentional conduct with reasonably foreseeable results; (B) which in the average person would evoke 'outrage and revulsion;' and, (C) which proximately causes pain and anguish, but not bodily injury.
>
> In this case both Smith and the Cancer Center have intentionally engaged in misconduct which supported, encouraged, and made possible the attempted murder of Abraham. A murder-for-hire plot is certainly misconduct which, in the average person, would evoke "outrage and revulsion." The murder-for-hire plot has proximately caused Abraham pain and mental anguish.

Doc. #3 at ¶¶ 57–58.[11]

The Bankruptcy Code does not expressly define what constitutes a personal injury tort claim. *Elkes Dev., LLC v. Arnold (In re Arnold)*, 407 B.R. 849, 851 (Bankr. M.D.N.C. 2009) (citations omitted). In deciding whether a personal injury tort claim precludes abstention, courts have taken three different approaches, applying either a narrow, middle, or expansive view. *Id.* at 851–52.

Courts applying the narrow view limit personal injury torts to those involving an actual physical injury. *Massey Energy Co.*, 351 B.R. at 351. These courts focus on the "traditional, plain-meaning sense" of what constitutes a personal injury tort. *In re Arnold*, 407 B.R. at 852 (citation omitted). *See also Priest v. Interco, Inc. (In re Interco, Inc.)*, 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991).

---

[10] Abraham also alleges causes of action for civil RICO, civil conspiracy, aiding and abetting as an accessory before the fact, and alter ego, but neither party addressed these claims in arguing for or against mandatory abstention. Instead, the focus was on Abraham's claim for emotional injuries. Accordingly, for purposes of mandatory abstention, the Court's analysis focuses only on the claim for the tort of outrage.

[11] Abraham's complaint accurately states the elements for such a claim. *See Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65 (Miss. 2004).

When applying the middle view, courts "weigh[] the personal nature of the injury against characteristics involving financial, business, property or contract rights." *In re Sheehan Mem'l Hosp.*, 377 B.R. 63, 68 (Bankr. W.D.N.Y. 2007) (citation omitted). "The middle ground encompasses torts involving bodily and reputational harm, without including those personal injury torts designated by statute only." *In re Arnold*, 407 B.R. at 852 (citation omitted). Thus, under this view, the bankruptcy court retains jurisdiction over financial, contract, or property torts, while bodily, emotional, and reputational harms qualify as personal injury torts for § 157 purposes. *In re Arnold*, 407 B.R. at 852–53 (citations omitted).

Under the broad approach, "a personal injury tort claim is not limited to a claim involving bodily injury." *Id.* at 852 (citations omitted). Rather, a personal injury tort "embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering." *Id.* (citations and internal quotation marks omitted).

The Fifth Circuit does not appear to have yet decided what approach should be applied in this context. Having considered the three views on what constitutes a personal injury tort under § 157(b)(4), the Court finds the middle view the most persuasive because it is more "closely aligned with what are traditionally thought of as the common law torts; and while it includes emotional and reputational harms, it does not go so far as to allow nonbankruptcy law to define certain torts as personal injury torts." *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 908 (Bankr. D. Nev. 2008) (internal quotations omitted).

Utilizing the middle approach, the Court finds that under § 157, Abraham's complaint alleges a personal injury tort because Abraham seeks to recover for emotional harm.[12] Thus, mandatory abstention is statutorily excluded by 28 U.S.C. § 157(b)(4).

### C. Discretionary Abstention

Having concluded that mandatory abstention does not apply, the Court turns to Abraham's alternative argument that discretionary abstention under 28 U.S.C. § 1334(c)(1) applies. Doc. #7 at 3. "[D]iscretionary abstention is broader in that it applies to a wider range of civil proceedings." *Henderson v. Bank of America, N.A. (In re Simmons)*, 510 B.R. 76, 88 (Bankr. S.D. Miss. 2014). Section 1334(c)(1) provides that, with one narrow exception,[13] "nothing prevents … a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 in or related to a case under title 11." In deciding whether to abstain, courts consider fourteen non-exclusive factors:

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficulty or unsettled nature of the applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

---

[12] Even if the Court applied the narrow approach, the personal injury exception to mandatory abstention may still apply. Abraham's allegations of physical injury have been inconsistent though. At one point, Abraham alleges he has not suffered a physical injury. *See* Doc. #8 at 10. On the other hand, he asserts in his complaint that he suffered from "substantial harm including mental and emotional distress and some physical injury. " Doc. #3 at ¶ 66.

[13] The one exception, though not applicable here, is "a case under chapter 15 of title 11 …." 28 U.S.C. § 1334(c)(1).

*In re Simmons*, 510 B.R. at 88–89 (citations omitted). *See Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 697–98 (N.D. Miss. 2004); *Anderson v. Nissan Motor Acceptance Corp.*, 326 F. Supp. 2d 760, 766–67 (S.D. Miss. 2003). Ultimately, when deciding whether to abstain, "[c]ase law holds that this Court, in its discretion may give greater weight to certain of these fourteen (14) factors." *McVey v. Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 193 (Bankr. S.D. Tex. 2014) (citations omitted). *See, e.g., Kollmeyer v. Aetna Life Ins. Co. (In re Heritage Sw. Med. Grp., P.A.)*, 423 B.R. 809, 816 (Bankr. N.D. Tex. 2010) ("factors (3), (4), (7), (10), (13) and (14) are either neutral or do not apply. Each of the other factors, however, weighs in favor of remand."); *Patterson v. Morris*, 337 B.R. 82, 97 (E.D. La 2006) (though not all discretionary abstention factors applied, abstention still appropriate because "these factors are non-exhaustive"), *aff'd in part and appeal dismissed in part sub nom. Patterson v. Dean Morris, L.L.P.*, 448 F.3d 736 (5th Cir. 2006) (citations omitted).

Considering these factors, discretionary abstention is appropriate in this case. Comity with state law weighs heavily in favor of abstention. Section 1334(c) "favors comity and the resolution of state law questions by state courts …. [A]bsent countervailing circumstances, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of section 1334 …." *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001).

Here, Abraham's complaint arises solely under state law. If not for bankruptcy jurisdiction, this case would not be before this Court. Because there is no basis for federal jurisdiction other than § 1334,[14] Abraham's complaint should proceed in state court. *See In re Gober*, 100 F.3d at 1207 (bankruptcy court did not abuse its discretion in abstaining from

---

[14] Defendants argue that their counterclaims arise under federal law. But, as explained above, federal jurisdiction may not be invoked based on a counterclaim.

"claims [that] hinge solely on questions of state law and invoke no substantive right created by federal bankruptcy laws" and "exist wholly outside of bankruptcy").

Abraham's election to have his complaint heard by a jury also weighs in favor of abstention. Moreover, there is no evidence that allowing the state court to adjudicate Abraham's claims will interfere with the administration of Dr. Smith's bankruptcy case. Indeed, the state court is in a better position to handle this case. As previously discussed, before removal, the case had been pending in state court for a number of years, the parties had engaged in extensive discovery, and the case was just three days away from being tried based on an established trial setting. Additionally, the judge assigned to preside over the case in state court was handling a number of related matters and, therefore, is more familiar with the case in its current posture than this Court. "Retention of the claims in federal court will almost certainly require some duplication of efforts already expended in state court and mean delay for final resolution of the claims." *Wright*, 2012 WL 3114536, at *7. Consequently, Dr. Smith's bankruptcy case will benefit by not having its proceedings delayed while this Court, if it declined to abstain, became familiar with the case. *See Anderson*, 326 F. Supp. 2d at 767. This also supports a finding that neither party will be prejudiced by abstention.

Further, although this case may ultimately affect Dr. Smith's bankruptcy proceeding if Abraham is awarded damages, the state court, for the same reasons articulated above, is still in a better position to handle the case. *See Borne v. New Orleans Health Care, Inc.*, 116 B.R. 487, 495 (E.D. La. 1990) ("[F]ederalism and comity considerations weigh in favor of abstention and remand, and these considerations outweigh any adverse impact abstention might have upon the administration of the estate."). All considered, the Court will abstain under 28 U.S.C. § 1334(c)(1).

### D. Equitable Remand

Abraham also urges the Court to remand this proceeding pursuant to 28 U.S.C. § 1452(b). Under § 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Equitable remand is similar to discretionary abstention. *Anderson*, 326 F. Supp. 2d at 766 (citations omitted). Accordingly, in deciding whether to remand a case on equitable grounds, a court considers the same factors underlying discretionary abstention. *Patterson*, 337 B.R. at 96 (citations omitted); *see Wright*, 2012 WL 3114536, at *7.

Here, in evaluating the discretionary abstention factors articulated above, the Court determined that discretionary abstention clearly applies in this case. Thus, for the same reasons, the Court likewise finds equitable remand appropriate.

### E. Severance of the Cancer Center

Lastly, Abraham argues that if the Court does not abstain or remand this proceeding, the Cancer Center should be severed. Doc. #7 at 3–4. Because the Court has concluded that both discretionary abstention and equitable remand are appropriate in this case, the Court need not address this issue. The request for severance, therefore, will be denied as moot.

## III
## Motion to Withdraw the Reference

Because the Court has decided to exercise its discretion to abstain and remand this proceeding to the Circuit of Leflore County, the motion to withdraw the reference will be denied as moot.

13

# IV
## Conclusion

For the reasons above, the Court does not have subject matter jurisdiction under 28 U.S.C. § 1331; the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334; mandatory abstention is inapplicable; and discretionary abstention and equitable remand are appropriate in this case.

Accordingly: (1) the motion to abstain and remand [7] is **GRANTED**, and this case is **REMANDED** to the Circuit Court of Leflore County, Mississippi; (2) the motion to withdraw the reference [4] is **DENIED as moot**; and (3) the "Motion for Writ of Certiorari to the Circuit Clerk of Leflore County, Mississippi for Certified Copies of the State Court Record and for Additional Time to File State Court Record" [25] is **DENIED as moot**.

**SO ORDERED**, this 7th day of March, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**